UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDV & CAD GROUP,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>SCOPIC SOFTWARE, LLC,<br><br>　　　　Defendant. | CIVIL ACTION NO.4:22-CV-40051-MRG |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, defendant Scopic, Inc. ("Scopic")[1] hereby submits the following statement of material facts to which it contends there is no genuine issue to be tried.

**A.     The Parties and their Respective Locations**

1.     Scopic is a software development company. It has no physical office locations in the United States. Rather, all Scopic personnel work remotely from home (or wherever else they choose to work from), and the company's Massachusetts address is simply used for mailing purposes.  Deposition of Scopic Software ("Scopic Depo."), attached as *Exhibit 1*, pp. 20-21.

2.     None of the Scopic personnel who worked with edv were located in Massachusetts. Indeed, Scopic did not have any software developers working on projects from the United States. Declaration of Mladen Lazic, attached as *Exhibit 2*, at ¶ 3.

3.     edv is a German sole proprietorship with its principal place of business in Irschenberg, Germany. Complaint, ¶ 2.

4.     edv sells cabinet-making software. It is wholly owned by Johannes Ellmeier ("Ellmeier"). Deposition of edv and cad Group ("edv Depo."), attached as *Exhibit 3*, pp. 11-12.

---
[1] Formerly Scopic Software, LLC.

B.   **edv Enters Into a Software Services Agreement with Scopic**

5.   Having done some research online, Ellmeier reached out to Scopic to help with edv's software development needs. edv Depo., Ex. 3, p. 27.

6.   Scopic and edv signed a Software Services Agreement (the "SSA") on February 25, 2019. All of the software that Scopic developed for edv was developed pursuant to this agreement. Deposition of Johannes Ellmeier ("Ellmeier Depo.")[2], attached as *Exhibit 4*, pp. 45-46; Software Services Agreement, attached as *Exhibit 5*.

7.   Among the terms of the SSA is a provision, located under the heading "Term and Termination," providing that "[t]he Provider can terminate this contract with 20 business days [sic] via email notification, as well as a return email from the Client or Delivery and Read Receipts." *Id*. at Scopic030222.

8.   The SSA also cautioned that "estimates are non-binding and only provided for Client information and planning purposes. The Provider can provide precision and confidence information for estimates but this does not imply any cap on hours." *Id*. at Scopic030218.

9.   edv commissioned Scopic to develop several software projects, among them an online cabinet planning software (the "WebCabinet Maker") and related customer relationship management software ("ElementsWeb").[3] Valeart Doli ("Doli") served as the project manager for Scopic on edv's projects. Scopic Depo., Ex. 1, p. 17; Complaint, ¶ 6.

C.   **ElementsWeb and the Related Addendum to the Software Services Agreement**

10.   edv first discussed ElementsWeb with Scopic in about May 2019. Scopic subsequently put together a Software Development Proposal for ElementsWeb on or about June

---

[2] The first pages of the "Ellmeier Deposition" are in fact a continuation of the edv Deposition (for which Ellmeier served as the company designee). Ellmeier's personal deposition begins on Page 57 of the transcript.
[3] ElementsWeb is frequently referred to as IKT-Online Administration Software in contemporaneous documents. edv Depo pp. 53-54.

19, 2019. In conveying the proposal to edv, Doli cautioned that Scopic's estimates were "rough in terms of tasks and numbers" and that "until we have Scope of Work agreed with you we cannot detail them properly." Doli Messages of June 19, 2019 with Software Development Proposal, attached as *Exhibit 6* at Scopic 0000740; Scopic Depo., Ex. 1, pp. 35-36.

11.     The proposal itself featured the following disclaimer: "The work involved in the project was estimates (sic) initially and has been in (sic) included in the following tasks, which are subject to change after discovery phase." Software Development Proposal, Ex. 6, at Scopic 0000744.

12.     Scopic then undertook the discovery phase, which it used to clarify the details of the project. In September 2019, Scopic informed edv that the project would take more time than originally estimated. Scopic Depo., Ex. 1, pp. 43-47.  On May 8, 2020, Scopic sent edv a series of revised estimates for the cost of completing ElementsWeb, broken down into three milestones, "M1," "M2," and "M3." Doli Message of May 8, 2020, attached as *Exhibit 7*; Scopic Depo., Ex. 1, p. 78.

13.     Scopic originally worked at a rate of $22.50 per hour. After receiving Scopic's revised estimates, edv expressed concern that the estimated number of hours (and related costs) were too high. Scopic Depo., Ex. 1, pp. 55-57, 60-61.

14.     In response to edv's concerns, Scopic drafted an Addendum to the Software Services Agreement ("Addendum") that would provide for discounted hourly rates for ElementsWeb. These temporary incentives applied only to ElementsWeb, not to any of the other projects edv was working on with Scopic. Ellmeier Depo., Ex. 4, p. 140.

15.     While it agreed to implement reduced hourly rates for ElementsWeb, Scopic warned that "[e]stimates are not exact science and regardless of the fact that we are confident in

1393767.12

the numbers, we cannot convert this to fixed price project by committing to realistic scenario especially at the rates above." Scopic also explained that besides the changes called for by the Addendum "[o]ther terms remain as defined in the SSAs." Ellmeier Depo., Ex. 4, pp. 135-138; Addendum Related Communications, attached as *Exhibit 8*, at edv 001697.

16. Scopic sent a draft of the Addendum to edv on May 20, 2020. The file was named "Addendum 1 to SSA - IKT Online-Administration-Software 1_05202020.docx." Ex. 8 at edv001695.

17. The Parties executed the Addendum on or about May 27, 2020. Under a heading entitled "Milestone Completion," the Addendum provides that a milestone shall be deemed completed, among other things, five business days after delivery if edv fails to perform acceptance testing. The Addendum further provides that "[t]his Addendum and Temporary Incentives will remain in effect until the M3 completion. The Provider reserves the right to terminate this Addendum and cancel Temporary Incentives immediately in case of violation of its terms by the Client." Addendum to Software Services Agreement, attached as *Exhibit 9*.

18. A few weeks after signing the Addendum, Scopic and edv signed the final specifications document for ElementsWeb. ElementsWeb Specifications Document, attached as *Exhibit 10*; edv Depo., Ex. 3, p. 68.

19. Ellmeier subsequently asked for additional features to be implemented in ElementsWeb that were not included in the ElementsWeb Specifications Document. edv Depo., Ex., 3, pp. 71-72.

20. On March 5, 2021, Scopic delivered a version of Milestone 1 of ElementsWeb to edv for bug-testing. In the message conveying the ElementsWeb server link, Doli told edv: "based on our SSA agreement, this will trigger a 5 working day acceptance period which will

expire on 12 th [sic] of February 2021. During this period, we expect for you to test and confirm that everything is as agreed in the Scope of Milestone 1 or report the bugs that you find." Deposition of Valeart Doli ("Doli Depo."), attached as *Exhibit 13*, pp. 108-109; March 5, 2021, Doli Message, attached as *Exhibit 11*.

21.     edv did not perform any bug-testing during the five working day acceptance period that followed. Ellmeier Depo., Ex. 4, pp. 10-11; *see* Ex. 9.

**D.     The WebCabinet Maker**

22.     In the fall of 2019, Hannes asked for Scopic's help in developing the WebCabinet Maker, telling Doli "we want to give the development of web Cabinet [sic] to scopic [sic]." Messages Between Ellmeier and Doli, attached as *Exhibit 12*.

23.     On February 4, 2020, Doli shared the "initial estimates" for the project. Doli qualified that "[t]he work is estimated based on all the information that you have shared with us in the last weeks and the workload we assume is required to complete the project," but emphasized that "[t]hese are rough initial estimates." Doli went to tell edv that "[w]e will need still to agree on a final Functional Specification Document which will include also the final design of the Cabinet Maker Tool and all its 3D elements." Doli Depo, Ex. 13, pp. 86-87; Initial Estimates for Cabinet Maker Tool, attached as *Exhibit 14*.

24.      However, no formal specifications were ever created for the WebCabinet Maker. Ellmeier Depo., Ex. 4 p. 63. Rather, edv preferred to request functionality for WebCabinet Maker through Jira, which is Scopic's ticketing software. Doli Depo., Ex. 13, pp. 24-25. Assuming the request was feasible, Doli would then respond with a time estimate for implementing it. Scopic Depo., Ex. 1, p. 125.

**E.    Scopic's Alleged Misrepresentations**

25.    edv alleges that Scopic falsely represented that it employed "top talent globally" and that the "vast majority of Scopic hourly projects are completed within established estimates." Supplemental Answers to Interrogatories, attached as *Exhibit 15*, Answer No. 13. However, Scopic employs a rigorous, multi-step interview process to ensure that it engages only top software engineers. Furthermore, the vast majority of Scopic's projects are indeed completed within the established estimates. Lazic Declaration, Ex. 2, ¶ 4.

26.    edv alleges that Scopic misrepresented the hours required to build ElementsWeb in its June 19, 2019 proposal and its May 13, 2020 estimate. Supplemental Answers to Interrogatories, Ex. 15, Answer No. 13. However, expert testimony establishes that Scopic's work estimates were reasonable. Report of Crista Videira Lopes ("Lopes Report"), attached as *Exhibit 16*, p. 5.

27.    edv cannot say that Doli ever knowingly misled it. edv Depo., Ex. 3, p. 93-94.

28.    Nevertheless, edv alleges that Doli misrepresented when the software he was working on would be ready. Specifically, edv claims that the following statements of Doli's were false: (a) a June 18, 2020 statement that beta version of both ElementsWeb and WebCabinet Maker would be ready within 1-2 weeks for testing; (b) a June 2020 statement that Scopic was clearing the bugs in the WebCabinet software and expected to finish that work by the next day; (c)  a December 17, 2020 statement that a stable version of WebCabinet Maker would be ready to test by Christmas;  and (d) a May 4, 2021, statement that Doli anticipated edv would have a bug-free version of the software that edv could start selling. Answers to Interrogatories, attached as *Exhibit 17*, Answer No. 11; Supplemental Answers to Interrogatories, Ex. 15, Answer No. 13.

**F.      Scopic Terminates the SSA in Response to edv's Threats**

29.     In the spring of 2021, Ellmeier was unhappy with Scopic's work on ElementsWeb and the WebCabinet Maker. Ellmeier, p. 142. During a videorecorded conference on June 23, 2021, Ellmeier threatened: "I will say when Scopic destroys my company, I will have to destroy Scopic, I can guarantee you. I have social media software and I can make in [sic] ten accounts, all social media accounts automatically posts [sic] about our experience with Scopic. I can make five thousand posts within three weeks." Scopic 0030166, attached as *Exhibit 18*, at time signature 2:27-3:03.

30.     Ellmeier threatened Scopic again in a June 30, 2021, message to Scopic, writing: "Scopic damaged my business already significantly and if we don´t get a satisfactory solution, it will have profound consequences for Scopic as well." Project Termination Communications, attached as *Exhibit 19*, at Scopic0018432.

31.     In light of these threats, Scopic's expert opines that it was reasonable for Scopic to invoke the termination provision of the SSA. Lopes Report, Ex. 16, p. 5, ¶ 14.

32.     On July 6, 2021 Scopic's Ivan Vucic gave edv notice of Scopic's intent to terminate the SSA, telling Ellmeier:

> The relationship between us is shaken and damaged by your threats and attempts to diminish Scopic's work and get more for your projects. Might I remind you that we went above and beyond to keep the IKT going and that we have not increased the rate for multiple years, on which we have rights per our SSA In fact, based on our goodwill, we have given you a significant discount to keep operating and push things forward.
>
> We have been in the industry for a long time (15 years) and we do understand funding and budgeting issues, but we have discussed, and we cannot accept your request to work on the remaining Jira tickets under the fixed-priced agreement. However, the history of the project, the conduct of the project, and your expectations don't give us enough confidence to continue in the same fashion.

>With that said, we have never left a client hanging and as a gesture of goodwill, we are willing to accept the losses and lower the rate for Web Cabinet Maker project to $18 per hour. At the same recent conduct, messages, and threats from your side, combined with previous similar activities have damaged our relationship and have proven that continued respectful and professional cooperation is not possible.
>
>Therefore, we are invoking the Termination Clause for all projects that we are working on together. The termination Clause states that we can terminate our contract with 20 business days' notice. However, as a gesture of good [sic], we will extend the termination notice to 40 business days. This notice period should give you enough time to find another vendor and we will transfer knowledge to any vendor that will be taking these projects over and will deliver everything that we have done up until that point. Our last day of work will be 40 business days from today [September 1st, 2021].

Project Termination Communications, Ex. 19 at Scopic0018433.

33. Both Ellmeier and his associate, Josef Fenniger ("Fenniger") replied to this message. On July 14, Fenniger told Vucic: "I was really shocked about your terminating the agreement. It is very difficult for me to understand as I took over the IKT project from Hannes and made the payments on guru. I worked together with the team on jira and it was running well." *Id.* at Scopic0018434. Likewise, on July 16 Ellmeier replied: "For now I suggest that the webcabinet team can finish their work with the web cabinet and put the latest code to gitea." *Id.* at Scopic0018435.

34. edv turned down Scopic's offer to work for another forty days on the WebCabinet Maker. edv Depo., Ex. 3, p. 153. On August 3, 2021, Doli handed the code and existing WebCabinet Maker builds over to edv. WebCabinet Maker Handover Message, attached as *Exhibit 20*.

35. Fenniger hoped to continue working ElementsWeb independently through his own company. However, after consideration Scopic rejected the request, explaining: "With the recent events and legal intentions that Hannes has shown and started to take against us, our cooperation was damaged, our upper management made a decision that unfortunately, we are not able to continue cooperation on any project." Ex. 20 at Scopic0018435-6. Nevertheless, work

8

1393767.12

continued on ElementsWeb for some weeks more. However, on October 13, 2021, Doli informed Fenniger that "we are already 2 weeks beyond the initial agreed deadline and we cannot work beyond the end of this week." Communications Between Fenniger and Doli Regarding ElementsWeb, attached as *Exhibit 21* at Scopic0006933. On November 15, 2021, Doli informed Fenniger that ElementsWeb was deployed in edv's account. *Id*. at Scopic 0006935-36.

36. As Ellmeier acknowledges, the Software Services Agreement was terminated before either the ElementsWeb or WebCabinet Maker project was completed. edv Depo. Ex. 3, p. 44. Nevertheless, edv did not reject delivery of either Web Cabinet Maker or ElementsWeb. Ellmeier Depo., Ex. 4 pp. 24-25.

37. edv has made no effort to use the ElementsWeb code that Scopic developed. edv Depo, Ex. 3, p. 86. It has developed a version of WebCabinet Maker, albeit without "one single letter of code from Scopic" as Ellmeier "didn't want to give Scopic at any chance to say 'you used my code…'" Ellmeier Depo., Ex. 4, pp. 21-23, 29.

Respectfully submitted,

Scopic Software, LLC

By its attorneys,

/s/ *Michael Brier*
Michael Brier, BBO#678647
michael.brier@gesmer.com
Lauren Haskins, BBO#
lauren.haskins@gesmer.com
Gesmer Updegrove LLP
40 Broad Street
Boston, MA  02109
Telephone:  (617) 350-6800
Facsimile:  (617) 350-6878

DATED: March 18, 2024

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon all counsel of record through the Court's Electronic Court Filing System on March 18, 2024.

                                                 /s/ *Michael Brier*

1393767.12